The PRUDENTIAL INSURANCE
COMPANY OF AMERICA, et
al., Plaintiffs,

v.

BMC INDUSTRIES, INC., Defendant.

BMC INDUSTRIES, INC.,
Third-Party Plaintiff,

v.

The FIRST BOSTON CORPORATION,
Third-Party Defendant.

No. 85 Civ. 4881 (RWS).

United States District Court,
S.D. New York.

Nov. 12, 1986.

See also, D.C., 655 F.Supp. 710.

Cahill Gordon & Reindel, P.C., New York City, for third-party plaintiff; Charles A. Gilman, Laurence A. Silverman, William A. Jacobson, Judith Poller, of counsel.

Oppenheimer, Wolff and Donnelly, Minneapolis, Minn., for third-party plaintiff; Michael Bleck, of counsel.

Sullivan & Cromwell, New York City, for third-party defendant; Michael A. Cooper, John L. Hardiman, of counsel.

SWEET, District Judge.

Third-party defendant The First Boston Corporation ("First Boston") has moved to dismiss the third-party complaint of defendant BMC Industries, Inc. ("BMC"), pursuant to Fed.R.Civ.P. 12(b)(6), for failing to set forth any third-party claims permissible under Fed.R.Civ.P. 14(a), in this action brought by The Prudential Insurance Company of America, Teachers Insurance and Annuity Association of America, State Street Bank and Trust Company, and Manufacturers Hanover Trust Company (collectively referred to herein as the "Plaintiffs") to obtain rescission of an agreement made between them and BMC. For the reasons stated below, that motion is denied.

**The Pleadings**

In their Second Amended Complaint (the "Complaint"), Plaintiffs assert claims against BMC for securities fraud under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77$l$(2), and common law fraud. These claims stem from an agreement dated December 13, 1984 (the "Note Agreement") pursuant to which Plaintiffs purchased from BMC $30,000,000 principal amount of 12½% twelve-year convertible, subordinated BMC notes (the "Notes").

Although it does not name First Boston as a defendant, the Complaint alleges liability against BMC predicated upon the acts and omissions of BMC and First Boston, as BMC's agent and financial advisor with respect to the issuance of the Notes. Among other things, First Boston initially contacted each of the Plaintiffs, prepared a Private Placement Memorandum dated August, 1984, provided financial information to the Plaintiffs, and participated in discussions and negotiations concerning purchase of the Notes.

The Complaint alleges that during the negotiation of the Note Agreement, BMC,

individually and through its agent First Boston, failed to disclose material information to the Plaintiffs concerning, *inter alia,* BMC's 1984 and 1985 projected earnings, operational difficulties at one of BMC's facilities, and the resignation of BMC's chief financial officer. Plaintiffs allege that they did not become aware of this information until after the Note Agreement was consummated and that they were, therefore, fraudulently induced to enter into the Note Agreement. As relief, Plaintiffs seek only rescission of the Note Agreement.

BMC answered the Complaint on July 22, 1985 and denied all allegations of wrongdoing. On the same day it served an Amended Third-Party Complaint (the "Third-Party Complaint") on First Boston. The Third-Party Complaint alleges claims for indemnification, contribution, breach of express contract, breach of implied contract, and negligence, based on allegations that BMC fully advised First Boston of any matters alleged in the Complaint and that First Boston had a duty to pass that information along to the Plaintiffs.

The Third-Party Complaint prays that the court enter judgment "holding The First Boston Corporation responsible to BMC Industries, Inc. for any and all liability (if any) which BMC Industries, Inc. may be held to have to Plaintiffs." It also seeks damages against First Boston for costs in defending against Plaintiffs' case and damages for First Boston's breach of its obligations to BMC.

**Conclusions**

The only issue raised by First Boston's motion is whether a defendant sued for rescission of a note agreement can bring a third-party complaint against one who was not a party to the agreement and received no benefits thereunder.[1]

Fed.R.Civ.P. 14(a) defines a permissible third-party claim as one against "a person not a party to the action who is or may be liable [to the defendant] *for all or part of*

---

**1.** First Boston asserts that it has never been paid for the services performed in connection with

the Note Agreement.

*the plaintiff's claim against him."* (Emphasis added). This limiting language means that "[a] third-party claim may be asserted under Rule 14(a) only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defendant." 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1446, at 246 (1971) (footnotes omitted); *see also Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2d Cir. 1984) (affirming district court's dismissal of third-party claims on grounds that "the third party's liability here is neither dependent upon the outcome of the main claim nor is the third party potentially secondarily liable as a contributor to the defendant"); *Index Fund, Inc. v. Hagopian*, 417 F.Supp. 738, 744 (S.D.N.Y.1976) (Rule 14 requires that the third-party claim "accrue only upon a finding of defendant's liability to the plaintiff on the main claim").

■ A third-party claim is not permissible simply because it arises out of the same nucleus of facts as the main claim. As Professor Moore has stated:

> It must be emphasized ... that generally an entirely separate claim may not be asserted against a third party under Rule 14, even though it arises out of the same general set of facts as the main claim. *There must be an attempt to pass on to the third party all or part of the liability asserted against the defendant.*

3 J. Moore, *Moore's Federal Practice* § 14.07[1], at 14–42 (1985) (footnotes omitted) (emphasis added). Nevertheless, this should not obscure the general purpose of Rule 14: "to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence [and] to obtain consistent results from identical or similar evidence." *Crompton-Richmond Co., Inc., Factors v. United States*, 273 F.Supp. 219, 220 (S.D.N.Y. 1967).

Rescission vitiates a contract and places the parties back in the same positions they were in before the transaction. *See National Conversion Corp. v. Cedar Building Corp.*, 23 N.Y.2d 621, 298 N.Y.S.2d 499, 246 N.E.2d 351 (1969). In this case, the Notes would be returned to BMC, which in turn would be required to return the $30,000,000 received under the Note Agreement. Were this result seen as returning the parties to the "status quo ante," it would seem impossible for BMC to "pass on" any "liability" to First Boston. The thrust of the Third-Party Complaint, however, is that such a return to the "status quo ante" would be highly damaging to BMC. BMC has spent the money that Plaintiffs loaned it and has planned its corporate affairs in reliance on the financing obtaining from Plaintiffs. A forced rescission would allegedly impair BMC's credit and business operations and threaten its corporate existence. It is this liability that BMC wishes to pass on to First Boston—damages caused by the very act of rescission.

■ This case is one of first impression in this court, for none of the authorities cited by the parties address the question of third-party liability when the only relief sought is rescission. There is no doubt here that First Boston's liability under BMC's claims for contribution or indemnity is "dependent on the outcome of the main claim." *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2d Cir.1984). First Boston is alleged to be liable for all or part of the claims of fraud against BMC because it allegedly committed the fraud as BMC's agent. If Plaintiffs are unable to show fraud on the part of BMC or First Boston, as BMC's agent, BMC will have no claim for contribution or indemnity against First Boston. If Plaintiffs are able to show fraud on the part of First Boston, it might be held liable for all or part of the claim against BMC, even though it would not be liable for the particular relief sought. The power to implead First Boston based on its fraud as an agent of BMC should not be limited by the form of the remedy requested in the Plaintiff's Complaint, especially when, as here, the relief sought is a lump sum of $30,000,000 minus the value of the Notes. *Cf. Old*

*Republic Ins. Co. v. Concast, Inc.,* 99 F.R.D. 566 (S.D.N.Y.1983) (holding third-party complaint proper in action for declaratory judgment, even though the defendant would have no pecuniary liability to plaintiffs).

█ Although no authority is presented for the proposition that contribution or indemnity is available where the main claim is for rescission alone, common sense dictates that contribution and indemnification, usually discussed in the context of damages actions, *see, e.g.,* N.Y.Civ.Prac.Law § 1401 (McKinney 1976), are also available where the defendant claims damages based on a remedy of rescission assessed against it.

Because BMC's claims for contribution and indemnity constitute valid third-party claims under Rule 14, the remaining claims can be joined under Rule 18(a) as additional claims. First Boston's motion to dismiss the Third-Party Complaint is, therefore, denied.

IT IS SO ORDERED.